

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed April 16, 2010                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHAUNA DANIELLE JENKINS, | § | Case No. 10-10088-RLJ-13 |
| | § | |
| DEBTOR | § | |

## <u>MEMORANDUM OPINION</u>

Hearing was held on April 6, 2010, on the motion of the debtor, Shauna Jenkins ("Jenkins"), requesting that the automatic stay be imposed pursuant to section 362(c)(4)(B) of the Bankruptcy Code. Jenkins has had two prior cases dismissed within a year of the filing of the present case. Both the bankruptcy filing and the motion were prompted by the repossession of Jenkins's car by Anthony Wells ("Wells"), who does business as A&W Motors. Jenkins and her counsel appeared at the hearing; Wells also appeared, but without counsel.

-1-

**Background**

The bankruptcy case was filed on March 26, 2010; the hearing on the motion was originally set on March 29, 2010. The Court continued the hearing to April 6, 2010, to allow Wells an opportunity to better prepare for the hearing, including to employ counsel. The Court directed Wells to hold the car pending the reset hearing on April 6. Wells obviously did not elect to retain counsel.

As Jenkins has had two bankruptcy cases dismissed within a year of the filing of the present case, the automatic stay did not go into effect upon filing of the instant case. *See* 11 U.S.C. § 362(c)(4)(A)(i). As Jenkins has requested here, a debtor may, within thirty days after filing the case (and with notice and hearing), request that the automatic stay be imposed by the Court. *See* 11 U.S.C. § 362(c)(4)(B). The bankruptcy court may grant such relief if the debtor demonstrates by clear and convincing evidence that her new case was filed in good faith. *See* 11 U.S.C. § 362(c)(3)(C) and (c)(4)(B).

Jenkins testified at the hearing; Wells did not file a response to Jenkins's motion and did not examine Jenkins or offer other testimony. He did offer into evidence the credit application signed by Jenkins on January 5, 2010. Jenkins filed the case as a means to regain possession of her car that was repossessed by Wells. Despite this, Jenkins testified that she intends to remain in bankruptcy and pursue confirmation of her chapter 13 plan even if she is unsuccessful in regaining possession of her car.

The purchase of the car and its repossession are relevant to the issue of whether Jenkins filed the present case in good faith. As stated, she filed the case to regain possession of the car. Jenkins purchased the car, a 2008 Chrysler 300, on February 5, 2010. The first payment was due

March 7, 2010.  Jenkins testified that Wells told her that she could make the first payment on February 19, 2010.  She did not make the first payment by the February 19 date as, according to Jenkins, she was tending to a medical emergency concerning her father.  When contacted by Wells regarding the missed payment, she explained her situation to Wells who told her she could make the first payment by the following Wednesday, February 24, 2010.  Wells repossessed the car on Tuesday, February 23, 2010.  Jenkins and her mother offered to make the first payment after the repossession but Wells refused payment, explaining that Jenkins was putting too much mileage on the car.  Jenkins made a down payment of $3,500.00 when she purchased the car.

Jenkins also owns a 1993 Mercury Marquis, which she says is her daughter's car.  This car has 256,000 miles and is presently "broken down".  The credit application signed by Jenkins on January 5, 2010, contains a question asking the applicant if a bankruptcy had been filed in the last fourteen years.  Jenkins checked the "No" box on this question.

The facts regarding Jenkins's prior two cases are skimpy, but are unrebutted.  Jenkins's first case, filed in May 2009, was dismissed because her work hours were cut and she was therefore unable to make her plan payments.  Her second case, filed in September 2009, was dismissed in November 2009 because she became ill, which required surgery and, again, caused her to default on her chapter 13 plan.  In fact, she missed her first payment in this second case.

Jenkins has been employed by the same employer for ten years.  She testified that she presently works regular hours and should therefore be able to make the plan payments provided for in her current chapter 13 plan.  She further testified that she is doing a better job of budgeting for herself and her two children.  Plus, both her children now have jobs of their own and can thereby assist Jenkins in meeting her regular and necessary expenses.  Finally, she testified that

her parents are willing to help out. All these things, according to Jenkins, will allow her to successfully propose and complete her present chapter 13 plan.

Jenkins is adamant that she needs the car back so she can get to and from work. She did not explain how she is presently getting to and from work, however. She testified that she has a lengthy commute each day for work.

## Discussion

Section 362(c)(3)(C) of the Bankruptcy Code provides that the bankruptcy case of an individual is presumptively filed *not* in good faith if such individual had more than one previous case pending within the preceding year. The same presumption arises under subsection (c)(4)(D) of section 362 if two or more previous cases concerning the individual were pending within the preceding one-year period. As here, it would appear that if there has been two previous cases pending, these provisions are redundant; in either instance, however, the debtor must rebut the presumption by clear and convincing evidence to the contrary. The Court must determine, therefore, whether Jenkins has demonstrated by clear and convincing evidence that she has filed the present case in good faith. In addition, given that Jenkins has two prior cases pending within the year, the automatic stay under section 362 of the Bankruptcy Code did not go into effect upon the filing of the present case. *See* 11 U.S.C. § 362(c)(4)(a)(i).

The Court finds at least four different approaches used by the bankruptcy courts in analyzing whether, under section 362(c)(4)(A), a debtor has demonstrated that her case is filed in good faith. The approaches differ more in emphasis than substance. First, some courts have employed the " totality of the circumstances" test, which is a big picture view that resolves the question upon the particular facts and circumstances of the case at hand. This approach gives a

-4-

court great flexibility in dealing with the nebulous concept of good faith and also recognizes prior decisions that have addressed good faith in the context of other provisions of the Bankruptcy Code (and before the existence of section 362(c)(4), which is part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). *See In re Thornes*, 386 B.R. 903, 907 (Bankr. S.D. Ga. 2007).

Related to the totality of the circumstances test is the factor-driven or checklist test under which the courts consider several factors in assessing whether the debtor is acting in good faith. As many as fourteen different factors have been identified using this approach. *See In re Ferguson*, 376 B.R. 109, 122-23 (Bankr. E.D. Pa. 2007). While the various factors provide a handy checklist for a court, this approach has been criticized as cumbersome. Many of the factors are not applicable in any one case. *See In re Thornes*, 386 B.R. at 908. And, as one court has stated, such test "tend[s] to nudge the judgment toward the factors rather than elicit the judgment from them." *See In re Sarafoglou*, 345 B.R. 19, 24 (Bankr. D. Mass. 2006). The court in *Sarafoglou* condensed the factor-driven analysis down to a four-part test, requiring that the debtor there demonstrate that she filed the case to obtain legitimate bankruptcy relief, that she was eligible for such relief, that she had sufficient resources "to render her pursuit meaningful," and that she was pursuing such protection and relief honestly. *Id*. at 24.

A third approach used by the courts arguably updates the good faith analysis by employing certain statutory standards found in § 362(c)(3)(C) and § 362(c)(4)(D). Standards under these provisions determine whether a case has been filed "not in good faith". The courts employing this statutory-based test require that the debtor prove by clear and convincing evidence that there has been a substantial change in the debtor's financial or personal affairs since

the dismissal of the previous case and that the present case will likely result in the confirmation of

a chapter 13 plan that will be fully performed by the debtor.  *See* § 362(c)(3)(C)(i)(III) and §

362(c)(4)(D)(i)(III).  This test is, in effect, a mirror-image standard derived from the statute: if

there has not been a substantial change, the case, per the statute, is presumptively not filed in

good faith; if there has been a substantial change, the case *is* filed in good faith.  Relying

exclusively on this standard, and thereby employing at least some of what Congress has stated

defines good faith (or, more precisely, not good faith), presents a problem if the previous case

was dismissed for reasons irrelevant to the debtor's "financial or personal affairs".  For example,

if the next prior case was dismissed because of the debtor's failure to obtain pre-petition credit

counseling as required by section 109(h)(1) of the Code, and such failure was caused by debtor's

counsel's failure to advise the debtor of the requirement, such dismissal should not, in fairness,

imply that the present case was filed in bad faith.  *See In re Ferguson*, 376 B.R. at 128.  Another

such example arises if a debtor, through an agreement with a particular creditor, voluntarily

dismissed a previous case.  *See, e.g., In re Charles*, 334 B.R. 207 (Bankr. S.D. Tex. 2005).

    The fourth approach employed by the courts in assessing the debtor's good faith

combines elements of the totality of the circumstances test, the factor-driven test, and the

substantial change test.  In *In re Ferguson*, the bankruptcy court discussed the three tests and

adopted a fourth test that considered the debtor's good faith "in both subjective and objective

terms".  *In re Ferguson*, 376 B.R. at 123.  The court stated as follows:

> After one or more prior chapter 13 cases have failed to achieve the debtor's financial
> rehabilitation goal, a debtor who files yet again, whether driven by self-deception or
> emotional desperation, may sincerely ( *i.e.,* subjectively) intend to implement a chapter
> 13 plan.  In that sense, the debtor may be acting in good faith. Objectively, however,
> the proposed chapter 13 plan may have little chance of success. Not surprisingly, courts

> have recognized that good faith in a bankruptcy rehabilitation case necessarily includes
> both subjective and objective components.

*Id*. at 123-124. The court referred to the "objective futility inquiry" by which the court must
determine whether the debtor has a reasonable likelihood of success in the present chapter 13
case. This recognizes the standard set forth at § 362(c)(3)(C)(i)(III) and (c)(4)(D)(i)(III). The
subjective component inquires, quite simply, whether the debtor has a subjective good faith
belief that she can reorganize. The court in *Ferguson* looked to the various checklists or factors
developed through prior decisions. The objective and subjective components overlap and blend
together to direct the court in its ultimate good faith determination. *See id.*

The court in *Ferguson* was influenced, in part, by *In re Charles*, 334 B.R. 207, which
addressed good faith in connection with § 362(c)(3) of the Bankruptcy Code (a case with one
prior pending case within a year of the case under consideration). In *Charles*, the court held that
good faith is determined on both an objective basis and on a subjective basis. *Id.* at 218. In
assessing objective good faith, the court analyzed whether the considered case is likely to result
in a discharge, i.e., the debtor will confirm a plan that the debtor will likely complete. *Id*. For
subjective good faith, the court employed the totality of the circumstances test in analyzing the
debtor's motives and her relationship with her creditors. *Id*. Unlike *Ferguson*, however, the
subjective and objective components do not overlap; instead, they form a two-part test with the
objective test serving as a threshold test and the subjective test employed only if the debtor first
satisfies the objective test. The *Charles* approach is arguably stricter than the totality of the
circumstances test. This is justified, however, by the debtor's history of repeat filings. This

approach recognizes Congress's view of repeat filers as reflected in the standards of § 362(c)(3) and (c)(4).

> [I]f the newly filed case is futile or if the debtor is filing merely to benefit from the "stay and delay," the Court must recognize this at the earliest possible time. In adopting §362(c)(3), Congress intended the Court to conduct an early triage of a case to determine if the case has a reasonable likelihood of success. *In re Charles*, 332 B.R. at 542. Indeed, this triage appears to be the analysis contemplated by §362(c)(3)(C)(i)(III). Absent exceptional circumstances, a debtor fails to sustain her burden of demonstrating good faith as to the creditors to be stayed if the case lacks a reasonable likelihood of success.

*Id*. at 219.

Assuming the debtor satisfies the threshold objective test, the courts following the *Charles* approach then turn to the subjective test and, in so doing, look at the totality of the circumstances and specifically consider the following factors: (i) the nature of the debt; (ii) the nature of any collateral; (iii) eve of bankruptcy purchases; (iv) the debtor's conduct in the present case; (v) reasons the debtor wishes to extend the stay; (vi) any other circumstances that weigh on the wisdom of an extension. *Id*. at 219. The court in *Charles* finally noted that though the debtor may demonstrate both objective good faith and subjective good faith, the court still has discretion whether to direct entry of the stay. This discretion arises from the statute which states that "the court *may* extend the stay" or, as in the instant case, the court "may order the stay to take effect." The debtor must demonstrate sufficient equitable factors to justify the court's exercise of such discretion, however. *Id*. at 223.

With the foregoing discussion in mind, the Court adopts the standard set forth by the court in *In re Charles*. This standard, in the Court's view, successfully blends the various tests

and, in so doing, simplifies the analysis.  It also recognizes at least some component definitions of good faith as reflected in the statute.  Jenkins's bankruptcy case is presumptively filed "not in good faith" as she has had two prior cases dismissed within a year of the present case.  As one court noted, "it is as though evidence has already been presented establishing that the case was not filed in good faith."  *In re Thornes*, 386 B.R. at 907 (quoting *Robinson v. Country Home Loans*, No. 05-43319, (Bankr. S.D. Ga. Dec. 29, 2005)).  Jenkins must rebut this presumption by clear and convincing evidence, which burden lies somewhere between the preponderance and reasonable doubt evidentiary standards.  Clear and convincing is said to mean "highly probable or reasonably certain or both."  *In re Sarafoglou*, 345 B.R. at 19; *see also In re OCA, Inc.*, 551 F.3d 359, 372 (5th Cir. 2008).

With respect to the objective test, the Court is convinced that Jenkins can likely prepare and obtain confirmation of a plan and, more important, will be able to successfully complete the plan.  Her testimony was unrebutted.  She has a stable job; she has been with the same employer for approximately ten years.  Her two children are now employed, which is a change from the situation that existed under her prior cases; they can help with the bills.  Jenkins is better able to weather future disruptions such as reduced work hours or illnesses, problems that plagued her prior two filings.  Jenkins's plan calls for sixty monthly payments to the chapter 13 trustee of $398.00 per month.  The Court is satisfied that, with a little luck and a bit more financial discipline, Jenkins can successfully complete such a plan.  While her multiple filings create the rebuttable presumption that Jenkins did not file the present case in good faith, her unrebutted and clear evidence that she has stable employment with additional income from both her two children and potentially her parents is sufficient to overcome the presumption.

The Court now turns to Jenkins's subjective good faith. This element presents a problem given her relationship with Wells, who is *the* creditor against which she seeks to have the stay imposed. Without belaboring the various factors outlined specifically by the *Charles* court, the Court is troubled by Jenkins's failure to honestly answer the question regarding her prior bankruptcies on the credit application submitted to Wells. This misrepresentation, along with the recent purchase of the Chrysler 300 car and her failure to timely make the first payment, leads the Court to conclude that Jenkins's filing, at least as to Wells, was not done subjectively in good faith.

Jenkins testified that despite the outcome of the hearing on her motion as it concerns Wells, she still desires to go forward with the chapter 13 case with the stay imposed as to all other creditors. The Court is satisfied that her desire in this regard is genuine. Her chapter 13 plan reveals that Wells is, practically speaking, the only secured creditor; in addition, she lists total unsecured creditors of $7,038.89. As stated, Jenkins should be able to successfully propose, confirm, and complete her chapter 13 plan. Barring a consensual resolution with Wells regarding the Chrysler 300 car, Jenkins will likely need to obtain other means of transportation to and from work (she did not explain how she was presently getting to and from work).[1] As with many chapter 13 cases, while Jenkins's financial situation is difficult, her bankruptcy case is very simple. There is, therefore, no extensive factor-driven analysis to engage in in assessing her subjective good faith. She has basically one secured creditor, no mortgage payment, and

---

[1]The effect of the Court's ruling is that the automatic stay is not imposed as to Wells. The Court is not, however, commenting on whether Jenkins has any state law right to regain possession of the car. Given the large down payment on the car and Wells's statement to Jenkins that she had until Wednesday, February 24, to make the first payment, a willingness on Wells's part to work with Jenkins would be an honorable gesture.

-10-

approximately $7,000.00 in unsecured debt.  Her stated intentions, along with her decision to file the present chapter 13 case and thereby commit to paying at least a portion of her debts, are  , in the Court's view, sufficient to conclude that Jenkins's filing is made in good faith as to all other creditors in the case.

The Court concludes that the automatic stay shall be imposed as to all creditors except Wells.  The Court will issue an order.

### End of Memorandum Opinion ###